### ROTHENBERG, In Re

Ohio Appeals, 2nd Dist, Montgomery Co.

No. 1591. Decided Jan. 29, 1940

James D. Herrman, Dayton; Louis R. Mahrt, Dayton, for appellant.

Irvin Rohlfs, Dayton, for applicant.

## OPINION

By HORNBECK, PJ.

This is an appeal on questions of law on behalf of the Dayton Bar Association from an order of the Common Pleas Court reinstating Alfred W. Rothenberg to the practice of law.

The applicant for reinstatement, 34 years of age, was admitted to the practice in Ohio on August 1, 1928. Some four months thereafter he committed certain acts in the practice of his profession as a result of which on August 20, 1929, a committee appointed by the Common Pleas Court filed charges against him consisting of three claims of misconduct, involving moral turpitude. The late Judge R. L. Gowdy of Greene County, sitting by designation in Montgomery County, after trial had, found that two of the counts were not proven and dismissed them but held that the other charge had been established and thereupon ordered that applicant be disbarred or removed from the practice of the law.

It was claimed that while the applicant was representing a prisoner, one Jack Greene, who was incarcerated in the Montgomery County jail, charged with carrying concealed weapons, the applicant told Greene that he was endeavoring to obtain a gun for him which applicant would get into the hands of Greene by means of some third person or persons, and thereafter did procure a gun in Cincinnati which was later found in the possession of a well-known criminal when apprehended in Dayton.

The charge which Judge Gowdy found to have been proven is found in a lengthy specification and the extent to which all of the details were established is not before us. The entry merely recited that applicant is "guilty of misconduct as an attorney at law and of unprofessional conduct involving moral turpitude, * * *".

The order of disbarment was entered of date March 17, 1930, which was afterwards affirmed by this Court.

On or about June 6, 1934, and later, on or about June 7, 1936, applicant filed motion for reinstatement which applications were denied. Thereafter, on March 23, 1939 applicant filed a third motion for modification of the formal order of disbarment, which motion was heard by Hon. Clarence Ahl, sitting by assignment in Montgomery County, who, after taking testimony, ordered applicant reinstated to the practice of law in all of the courts of this State.

It is from this order of reinstatement that the appeal is prosecuted.

The errors assigned will be designated as they are considered. First, it is claimed that there is

## CONFLICT BETWEEN SECTIONS 1698 GC and 1709 GC.

Sec. 1698 GC sets up the requisites to the admission of a person to practice as an attorney and counselor at law. Sec. 1709 provides for review of orders of suspension or removal of an attorney at law from the practice and further,

"If such suspended or removed attorney shall desire modification of the decree of suspension or removal, he shall file a written motion therefor in the court which entered such decree."

It is suggested that the proper procedure would be for one who has been disbarred to make application anew, under §1698, and meet the requirements as to the admission to

the bar as though an original applicant.

We perceive no conflict between the sections. §1698 provides the basis upon which one may originally qualify for admission to practice as ▬▬▬▬▬ ▉ an attorney at law and §1709, specifically refers to the action required by one who has been admitted and who desires a modification of an order suspending or disbarring him from the practice of law. There is no difficulty in construing these sections together and to give both full meaning. If the claim of appellant is accepted the last sentence in §1709 will be rendered nugatory and without effect.

We are, however, not required to look to the statutes alone for construction of the proper procedure requisite to the reinstatement of an attorney disbarred from the practice.

In Re Disbarment of Charles A. Thatcher, 83 Oh St 246, recognizes and approves the steps taken by the applicant in this case. In the cited case, Thatcher had theretofore been disbarred by order of the Supreme Court, 80 Oh St 492, and in the cited case the court took jurisdiction of, tried and determined the motion of Thatcher to reinstate. This is the stamp of approval by our highest court of the procedure prescribed by §1709 GC.

Outside of Ohio there are authorities holding both ways on the proposition. In California it has been said that the application to vacate the order of disbarment must be addressed to the court having jurisdiction to admit an attorney to practice, 7 C. J. S., 817 citing cases from California and Texas.

REFUSAL OF COURT TO ADMIT TESTIMONY OFFERED BY APPELLANT.

At the beginning of the hearing the following statements are found, page 2 of the record.

"Mr. Rohlfs: * * * The first application (for reinstatement) was filed several years after his disbarment. The court thought at that time that he had been punished sufficiently, that he had been out of the practice long enough. The second application for reinstatement was made—

The Court: It isn't the theory of the court to punish anybody in disbarment proceedings. Did the court say that or was that just your conclusion?

Mr. Rohlfs: I think probably that is in the record, the word, 'punishment'.

The Court: Is it? Very well.

Mr. Rohlfs: I think you will probably find it is throughout the record there.

The Court: All right."

Later in the hearing counsel for appellant by the Official Court Reporter proffered in evidence the decision of Judge Miller at the time of his refusal to sustain the application of applicant for reinstatement. The Court inquired, "How do you claim that is competent?"

"Mr. Herman: If your honor please it is a matter of record in the case and the bill of exceptions and what not in this case are lost and we think the court ought to have before it the record in the case.

The Court: The court speaks only through its journal. You may tender it, it will be rejected. Note your exceptions."

Exceptions were noted by appellant.

It is now urged that the action of the court in refusing to admit this decision was prejudicially erroneous.

It will be noted that no objection was made to the statement of counsel for the applicant; that he does not say that the judge in his opinon made the statement that the applicant had been punished enough but that it probably appeared in the record. (Emphasis ours). Finally, the ruling could not have had prejudicial effect in the instant proceedings because the judge indicated full appreciation of the fact that the punishment of the applicant was no part of the disbarment order.

The admission of the decision of Judge Miller was within █ the discretion of the trial judge and his refusal to accept it was not erroneous.

The third and determinative question before the court is,

IS THE ORDER OF REINSTATEMENT CONTRARY TO LAW AND UNSUPPORTED BY THE EVIDENCE?

The only theory upon which we could say that the order of reinstatement was contrary to law, would be that the act of which applicant was █ found guilty constituted moral turpitude of such gross character and so flagrant that the very commission of the act marked the applicant as devoid of that fundamental moral perception and personal integrity required of a lawyer.

We make this observation because a fair consideration of the record discloses that the trial judge had the right to conclude that the only professional misconduct which would prevent the reinstatement of the applicant was that which was established by the order of disbarment.

The trial judge took full cognizance of the opprobrious character of the charge which Judge Gowdy held to be proven against the applicant. This charge is such as to cause any court to question whether or not one who was guilty thereof could thereafter bring himself into proper relation to and appreciation of the ethical standards of the legal profession. This, in our judgment, is the most serious question presented upon this record, the one which has caused us to pause and has given us the most concern.

It is unfortunate that the record in the original proceedings was not before the trial judge and is not with us, so that we could determine to what extent the specifications of the first charge against the applicant were established. It is obvious that there would be ample basis for the order of disbarment upon proof of much less than the whole of the first charge, as set forth by the Committee.

We have concluded that notwithstanding the gross misconduct with which applicant was chargeable because of the basis of the order of disbarment, the Court did not err in finding that he might be rehabilitated and re-established in his concept of the moral implications of his office of attorney at law.

THE WEIGHT OF THE TESTIMONY.

The next question relates to the probative effect of the testimony.

It is urged by counsel for the Committee that most of the witnesses were not fully informed of the charge upon which applicant was disbarred; that many based their opinions that applicant should be reinstated upon the theory that he had been sufficiently punished and that because of the lack of proper hypotheses the opinions were of little or no effect.

A careful reading of the record is convincing that all of the witnesses, except a few who stated that they knew nothing about the charge of which applicant was convicted, knew generally the basis of the disbarment. Some witnesses secured their information from the newspapers, others by talking with other attorneys. In most instances before a witness had been released, counsel for the Committee apprised him of the specific nature of the charge which was the basis of applicant's disbarment. In no instance did a witness change his stated opinion after he was fully informed as to the charge against the applicant.

It also appears that those witnesses who based their opinions in part upon the proposition that the applicant had been sufficiently punished included also, as a reason for their statements, that he had reformed and was then of such moral character as that he would be a proper person to entrust with the duties of an attorney at law.

Judge Shauck tersely says in the opinion Re Disbarment of Thatcher, 83 Oh. St at page 249,

"What question does his motion require us to determine? Certainly not the question suggested by its conclud-

ing paragraph. So often and so clearly have courts pointed out that in proceedings of this character the punishment of the offending lawyer is neither involved nor considered that repetition is not necessary."

This statement was true and very proper to make plain the narrow question to be determined in disbarment proceedings which a little later is set forth in the opinion.

Of course, a mere sentimental belief that the erring lawyer has █ been punished enough will not justify his reinstatement. Re Morton, (Cal. Ap.) 243 P. 32; Re O'Connel, (Cal. Ap.) 222 P. 625; Re Cate (Cal. Ap.) 279. However, it is impossible to disregard the punitive effect of disbarment which takes away from the average lawyer his principal means of livelihood. The consideration of the punishment of disbarment is proper to determine the ultimate question, viz: what effect it has accomplished. Has it embittered the offender, has he continued to disregard the ethical side of his nature or has he turned about, maintained a proper attitude toward the public and the administration of justice. In other words, has he regained that moral rectitude which is prerequisite to the original admission to the bar.

The evidence on behalf of the applicant is made up from an array of witnesses of high character who, it must be assumed, would not have committed themselves to an opinion that the applicant was worthy of reinstatement had they not been thoroughly convinced of that fact. Among the number were, public officials, former judges, Mayor of the City of Dayton, State Senator, U. S. District Attorney and former Prosecuting Attorney, former President of the Bar Association of Montgomery County, incumbent when one of the motions for reinstatement of applicant was heard, Assignment Commissioner of the Common Pleas Court of Montgomery County, neighbors, schoolmates and business associates of applicant and two attorneys who represented the Com-

mittee in the original proceedings against the applicant.

Practically all of them stated that the applicant, who was a young man at the time of his misconduct, quite immature and probably carried away by the false glamour of the practice of the criminal branch of the law had during the nine years of disbarment from his profession regained that quality of moral character which fitted him to again engage in the practice of the law.

It is probable that it was not the opinions of these witnesses that the applicant should be reinstated that weighed most heavily with the trial judge but the basis upon which they predicated their opinions.

The trial judge had full appreciation of the test which he should apply in determining whether or not the applicant should be restored to the right to practice law, as announced on page 2 of his opinion, namely, █ "whether the granting of his application would probably be promotive of the right administration of justice". **In Re Disbarment of Thatcher, 83 Oh St 246.** He then states,

"With this question in mind, careful consideration of the evidence clearly and convincingly proves to this court that the answer must be in the affirmative."

He then finds by "clear and convincing evidence that the applicant is at the time of the decision a man of good reputation, excellent character and that his character is such that this court has reason to believe and does believe that the public interest will be conserved by his participation in the practice of law."

The gist of all of the testimony offered by the applicant, given such weight as the trial judge had the right to accord to it, was in support of the conclusion which was reached.

The only evidence offered by counsel for the Committee, except that which it elicited upon cross-examination of ap-

plicant's witnesses, was the testimony of Mr. George E. Alcorn. The purpose of this evidence is to disclose a course of conduct and attitude of mind on the part of the applicant which is inconsistent with the claim that he has reformed in his concept of the ethics of his profession. The only definitely unethical act in the transaction under consideration would have been the employment of an attorney to take the cognovit judgment against individuals who were in bankruptcy court for the purpose of re-organization under Sec. 77 B. Applicant specifically denied. and in this he was not contradicted, that he had any knowledge of the bankruptcy proceedings.

Our test in passing upon the order of the trial judge is either, was it an abuse of discretion, 5 Am. Jur. 443, Re Daugherty (W. Va.) 136 S. E. 402; Annotation 95 Am. Dec. 344, or was it contrary to and against the manifest weight of the evidence?

The court very properly took into consideration applicant's character and standing prior to his disbarment, the matter and character of the charge for which he was disbarred, his conduct subsequent to the disbarment, and the time that has elapsed between the disbarment and the application for reinstatement. Re Bruner (Wash.) 34 P. (2d) 437. Ann. Cas. 1912 A. 814, all as related to the question whether or not applicant should be reinstated under the rule announced in Re Disbarment of Thatcher, supra, **Re John A. King, etc. 54 Oh St 415.**

This conclusion upon any test that a reviewing court can properly apply was not prejudicially erroneous.

We have not considered the question which is the subject of Judge Geiger's separate opinion because it was not raised by applicant and no objection was interposed to the appeal. Of course, we may on our motion always raise and consider the question of our own jurisdiction, and the opinion of Judge Geiger will, no doubt, be of interest to the legal profession.

The judgment will therefore be affirmed.
BARNES, J., concurs.

By GEIGER, J.

I concur in the judgment of my associates if this Court has jurisdiction to consider the matter upon appeal from the judgment of the Court below reinstating the attorney.

I have no doubt that Mr. Rothenberg had the right to appeal from the order of the Court by which he was disbarred, but it does not follow that the action of the Court reinstating him can be reviewed on notice of appeal by the Dayton Bar Association.

I shall be as brief as possible in presenting my views, in the main simply citing cases and statutes rather than discussing them, emphasizing by proper emphasis matters which I deem of importance.

Both the suspension and reinstatement of attorneys are provided for in §§1707, 1708, 1709 and 1710 GC.

**Sec. 1707** provides that courts enumerated may suspend or remove an attorney for misconduct in office involving moral turpitude, etc., and such suspension or removal shall operate as a suspension or removal in all courts of the State.

**Sec. 1708 GC** provides that before an attorney is suspended or removed, written charges must be filed against him stating distinctly the grounds of complaint, and he shall be allowed time to present his testimony in defense, and shall be heard. **Sec. 1709 GC** provides that in case of **suspension or removal** by the Common Pleas Court, an appeal on questions of law may be had to the Court of Appeals and the **sentence** of either the Common Pleas Court or the Court of Appeals may be reviewed on appeal on questions of law in the Supreme Court. **If such suspended or removed attorney at law shall desire a modification of the decree of suspension or removal, he shall file a written motion therefor in the court which entered such decree.** It will be observed that this section specifically provides that in case of suspension, an appeal on ques-

tions of law may be had to the Court of Appeals and the sentence of either the Common Pleas Court or the Court of Appeals may be reviewed in the Supreme Court. This right to an appeal and review is granted only when there has been a suspension or removal. If the attorney desires a modification of the decree he shall file a motion in the court which entered the decree, but the statute is silent as to an appeal from the action of the court upon the attorney's motion for modification. "Expressio unius est exclusio alterius." For reasons which are quite apparent and need not be discussed at length, where the attorney is disbarred he shall have a right of appeal, but where he is reinstated the action of the Court is final.

Sec. 1707 grants the power to the several courts to punish the attorney and to make their order effective in all the courts of the state. It further provides that judges of such courts are required to cause proceedings to be instituted when it comes to the knowledge of any judge or when brought to his knowledge by the Bar Association of the county, that the attorney may be guilty. Sec. 1710 provides for compensation of the persons appointed to prosecute the charges or "to resist the modification of any decrees."

The record in this case discloses that the action which is now before us for review was begun against the attorney on August 20, 1929, ten years ago, by the filing of charges. Such charges disclose the authority for their filing, in the following language:

"This court having heretofore appointed Carroll Sprigg and Sidney G. Kusworm, to prepare and file written charges against one Alfred W. Rothenberg, an attorney at law, said appointees do hereby in pursuance and by virtue of said order submit and file against said Alfred W. Rothenberg the following charges and specifications."

The record does not disclose any action of the Court appointing these two gentlemen to prepare charges, but the entry of January 14, 1930, recites,

"The Court fixes the compensation of the Committee heretofore appointed, * * * under the order and appointment of this court heretofore made and entered, * * *."

On February 8, 1930, the final entry disbarring the attorney was filed, reciting that the cause came on to be heard upon the charges filed against Rothenberg for alleged misconduct. Various motions were later filed by the attorney and overruled, and it was ordered that he be disbarred. The bill of exceptions was filed and allowed and the case was presented on appeal by the disbarred attorney to the Court of Appeals where the judgment of the Court of Common Pleas was affirmed.

On June 6, 1934, the attorney made a motion to set aside the decree and on August 16, 1934, it was ordered that Louis T. Schulman and Wayne F. Lee be and they are hereby appointed as counsel to represent this Court and the Dayton Bar Association. On June 24, 1935, an entry allowed attorneys' fees to Lee and Schulman, "heretofore appointed in the within matter as prosecutors." On June 17, 1936, another motion was filed by the attorney to modify the former order of the court, and it was then ordered that James D. Herrman and Louis R. Mahrt be appointed "as counsel to represent this court and the Dayton Bar Association in these proceedings". Thereafter fees were allowed to the attorneys appointed "to represent this Court and the Dayton Bar Association". On August 21, 1936, the application for reinstatement was denied.

On March 23, 1939, the defendant filed a third motion for modification of the decree and for reinstatement and on June 3, 1939, James D. Herrman and Louis R. Mahrt were appointed as counsel "to represent this court and the Dayton Bar Association" in these proceedings and on June 29, 1939, fees were allowed to these attorneys "heretofore appointed by this Court to represent the local Bar Association".

On June 29, 1939, the case came on to be heard upon the motion of the disbarred attorney for modification and for reinstatement and the Court then

ordered that Rothenberg be reinstated as an attorney in all the courts of the state. to which finding the local Bar Association excepts.

On July 19, 1939, notice of appeal was filed by James D. Herrman and Louis R. Mahrt, for the Dayton Bar Association as follows:

"The Dayton Bar Association, an interested party herein, hereby gives notice of appeal to the Court of Appeals from a judgment rendered by the Court of Common Pleas in the above entitled cause on the 29th of June, 1939. Said appeal is on questions of law.

(Signed) James D. Herrman,
Louis R. Mahrt,
Attorneys for the Dayton Bar Association."

Thereupon the appeal was docketed in this court.

Ten years elapsed between the filing of the charges and the final reinstatement of the attorney, during which time there was one appeal to the Court of Appeals from the order disbarring him, and three motions for reinstatement, the last of which was successful.

The judicial literature on disbarment proceedings in Ohio center largely, although not exclusively, about the disbarment of Charles A. Thacher, first by the action of the Supreme Court and at a subsequent date by the action of the United States District Court. These cases are all interesting and for the convenience of any who wish to further pursue this matter, are cited as follows:

In re Charles A. Thatcher, 80 Oh St 492.

In the Matter of the Disbarment of Charles A. Thatcher, 83 Oh St 246.

In re Thatcher, 190 Fed. Rep. 969.

State ex Thachter v Brought, 15 O. C. C. Rep. (N.S.) 97.

In re Charles A. Thatcher, 12 O. N. P. N. S. 273.

In the Matter of Charles A. Thatcher (Dissenting Opinion) 12 N. P. N. S., 497.

Other disbarment proceedings which are interesting, but throw no light upon the question before us are:

In the Matter of John A. King, 54 Oh St 415.

In re Hawk, 107 Oh St 341, which relates to appellate jurisdiction, in which Judge Wanamaker deals at length with, and denies the right of an attorney disbarred to appeal on what would now be "questions of law and fact" from a disbarment action. It was there held that,

"Chancery cases do not now and never have comprehended proceedings in disbarment or suspension of attorneys at law."

The case is interesting, the opinion being written by Judge Wanamaker in his usual positive style.

State ex Hawk v Le Blond. 108 Oh St 126, throws no light upon the question under discussion.

Schwartz v State of Ohio. 18 Oh Ap 373; 22 O. L. R. 152, was decided by the Court of Appeals for Franklin County, the Judges of the 9th Appellate District sitting in place of Judges of the 2nd District. It is there held that in Ohio a disbarment proceeding is purely statutory, and is neither an ordinary civil action nor a criminal prosecution, and is distinguishable from both with respect to the object sought and the procedure governing civil and criminal actions, and if the Prosecuting Attorney is not appointed by the Court as one of the committee to prosecute charges he is not authorized to prosecute the same, and his waiver in writing of the issuance or service of summons in error will not give the Court of Appeals jurisdiction. This was an action in which the disbarred attorney sought a review on petition in error, but was denied the same for the reason that proper service was not made within time.

In the matter of Edward P. Strong, 27 O. C. A. Rep. 257 (Cuyahoga County) seems out of harmony with the other cases, or at least with the present statute, in that it holds that the penalty of disbarment from practice must be limited in its application to the Court in which it is pronounced.

I have examined all these cases and I find that in none of them has there been an appeal from the order of the court reinstating the removed attorney, by any individual or association, resisting the modification of the decree. The nearest to such a proceeding of which I have knowledge, was the recent cross appeal of the Dayton Bar Association to the Supreme Court, from an order of this court—In Re Drewey H. Wysong,—recently decided. In that case the Supreme Court overruled motion to certify, but did not consider this point.

Sec. 1709 GC not providing for a review on appeal from the order of the court modifying the decree of suspension, we examine the general statutes relating to procedure on appeal.

Sec. 11582 GC provides "A judgment is the final determination of the rights of the **parties in action**".

Sec. 12223-2 defines a final order as one "**affecting a substantial right in an action,** when in effect it determines the action and prevents a judgment."

It is important that we give consideration to the definition of a final order as found in §12223-2. It is an order affecting a **substantial right in an action.**

Armstrong, Receiver v Brewing Co., 53 Oh St 467, holds:

"(1) The term 'substantial right' as used in §6707 R. S., involves the idea of a legal right.

(2) Such right is one which is enforced and protected by law." See p. 475.

See North v Smith, 73 Oh St 247.

I have been at some length in discussing this matter, because I deem it of importance. I arrive at the conclusion, considering the provisions of §§1709 and 1710 GC and also the general procedure on appeal, that the Dayton Bar Association has no substantial right in the order reinstating the attorney.

"The right of appeal is a statutory right and by legislation this right may be given or denied."

State ex rel v Beall, 136 Oh St 212-217, Oh Bar Janu. 15, 1940.
Commission v Monroe, 111 Oh St 812.

While §1709 GC, does not expressly deny an appeal from an order reinstating the attorney, it does at least withhold such right, by silence, in the same section which gives the right of appeal from the order disbarring the attorney.

The machinery provided does not contemplate that there shall be an appeal by any one from an order reinstating a disbarred attorney, and even if it did there is no showing of a "substantial right" in the Dayton Bar Association. The only reference to a Bar Association as an interested party is found in the provision of §1707, that Judges are required to cause proceedings to be instituted "when brought to his knowledge by the Bar Association of the County."

The several committees were appointed to represent "this Court and the Dayton Bar Association". It would certainly be unusual to permit the committees, appointed to represent the Court, to file an appeal from the order of the Court which it was appointed to represent, seeking its reversal.